UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CRAIG LITTLEPAIGE,

               Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

               Defendant.

Case No. C17-823 RSM

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Craig Littlepaige seeks review of the denial of his application for supplemental security income and disability insurance benefits. Mr. Littlepaige contends the ALJ erred by discounting his testimony and the opinions of several mental health providers, and requests the Court remand his case for further administrative proceedings. Dkt. #9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Littlepaige is currently 47 years old, has a high school education, and has worked as a bindery worker. Tr. 31. On December 19, 2013, he applied for benefits, alleging disability as of Mar 1, 2012. Tr. 19. His applications were denied initially and on reconsideration. Tr. 19. After the ALJ conducted a hearing on July 1, 2015, the ALJ issued a decision finding plaintiff

not disabled. Tr. 19-33. The ALJ determined that the period at issue for Mr. Littlepaige's applications for benefits began July 9, 2013, after previous denials of benefits became administratively final. Tr. 19.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Littlepaige has not engaged in substantial gainful activity since the relevant period began.

**Step two:** He has the following severe impairments: schizoaffective disorder, learning disorder, and post-traumatic stress disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Littlepaige can work at all exertional levels. He can understand, remember and carry out simple, routine, repetitive tasks. He cannot perform any tandem tasks, or tasks involving cooperative or team effort. He can have occasional, superficial contact with coworkers and supervisors. He cannot have any contact with the general public.

**Step four:** He can perform past relevant work as a bindery worker.

**Step five:** In the alternative, as there are jobs that exist in significant numbers in the national economy that he can perform, Mr. Littlepaige is not disabled.

Tr. 22-32. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## DISCUSSION

**A.     Medical Opinions**

Social Security regulations distinguish among treating, examining, and nonexamining physicians. 20 C.F.R. § 404.1527. "While the opinion of a treating physician is … entitled to

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject an uncontradicted opinion of a treating or examining doctor by stating "'clear and convincing reasons that are supported by substantial evidence.'" *Treviso v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even if "'a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.*

### 1. Treating Doctor James R. Hopfenbeck, M.D.

#### a. Standard of Review

As an initial matter, Mr. Littlepaige contends that Dr. Hopfenbeck's opinion is "uncontradicted" because it is only contradicted by nonexamining doctors, and thus can only be rejected based on "clear and convincing" reasons. *See Treviso*, 871 F.3d at 675. But when contradicted by "another doctor's opinion," even a nonexamining doctor's opinion, an ALJ need only provide "specific and legitimate" reasons. *Id.* at 675, 676 (where treating physician's opinion was inferred to be inconsistent with nonexamining physician's opinion, "specific and legitimate" standard was applied). The "specific and legitimate" standard applies here.

#### b. Dr. Hopfenbeck's Opinion

Dr. Hopfenbeck opined that, among other limitations, Mr. Littlepaige would be markedly limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 1385. He also opined that Mr. Littlepaige would miss more than four days per month because of his mental impairments or treatment. Tr. 1386.

The ALJ discounted Dr. Hopfenbeck's opinion as inconsistent with the medical record and with Mr. Littlepaige's daily activities and efforts to work. Tr. 28-29.[4]

### c. Consistency with the Record

The ALJ discounted Dr. Hopfenbeck's records on the grounds that it conflicted with the record because his and other providers' treatment notes showed generally normal mental status examination results, Dr. Hopfenbeck did not personally observe Mr. Littlepaige being distracted by internal stimuli, and his opinion was based largely on Mr. Littlepaige's self-reports.

The ALJ erred in rejecting Dr. Hopfenbeck's opinion on the grounds of inconsistency with the medical record and his own treatment notes. Even the notes the ALJ cites as showing generally normal findings contain frequent references to abnormal findings such as poor or limited judgment and insight, impulsive speech, restricted affect, "loose associations [and] bizarre references." Tr. 1071, 1083, 1088, 1096. Other objective findings in the same records include: "[d]istracted by internal stimuli"; "possible responding to internal stimuli"; "+ hallucinations"; "very delusional"; "paranoid affect." Tr. 1113, 1134, 1174, 1179, 1185, 1124. One report, from a psychiatric social worker at the prison Mr. Littlepaige was in, required him to be "assess[ed] for safety of others prior to being allowed in day room." Tr. 1124. While there are some normal findings, overall the record relied on by the ALJ does not reflect generally normal mental health. The overall record does not, therefore, conflict with Dr. Hopfenbeck's

---

[4] The ALJ also discounted Dr. Hopfenbeck's opinion because it was expressed in check-box form describing Mr. Littlepaige's limitations rather than remaining abilities, and was "speculative" because he wrote that the assessed onset date was "[a]t least since 7/8/2014." Tr. 29 (alteration in original) (quoting Tr. 1386). The Commissioner offers no argument on these grounds, and thus appears to concede that they are erroneous. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (discounting opinion because it was in check-box form was erroneous where opinion was supported by treatment records); 20 C.F.R. § 404.1527 (medical opinions include judgments about what the claimant can still do *and* restrictions); 20 C.F.R. § 404.1509 (impairment must have lasted *or* "be expected to last" 12 months).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

opinion.

The ALJ also discounted Dr. Hopfenbeck's opinion because he did "not indicate in his treatment records that he has ever observed the claimant being distracted by internal stimuli." Tr. 29. But several treatment records indicate that other providers did make such observations. Tr. 1113 ("Distracted by internal stimuli"), 1134 ("possible responding to internal stimuli"), 1174 ("+ hallucinations"), 1179 ("Delusional"), 1185 ("very delusional"), 1096 ("Denies [auditory hallucinations] but has some latency in responses."). There is no allegation that the hallucinations are constant, and the ALJ also does not explain why not observing one personally undermines Dr. Hopfenbeck's opinion. This reason lacks specificity and legitimacy.

The ALJ also erred in rejecting Dr. Hopfenbeck's opinion as based too heavily on Mr. Littlepaige's own self-reports. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Evaluating an opinion on mental health is different from evaluating an opinion on physical health. The Ninth Circuit recently held that an ALJ erred in rejecting a psychiatrist's opinion based on "partial reliance on [the claimant's] self-reported symptoms…." *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017). The *Buck* court noted that psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient[,]" because "unlike a broken arm, a mind cannot be x-rayed." *Id.* at 1049 (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.* A mental health professional is trained to observe patients for

signs of their mental health beyond what can be learned from the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality."  Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination at 4 (Oxford University Press 1993).  It is also not uncommon for a person suffering from a mental illness to be unaware of the import of certain signs and symptoms.  *See Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("those afflicted often do not recognize that their condition reflects a potentially serious mental illness").  Here, for example, Dr. Hopfenbeck noted that Mr. Littlepaige "[d]escribe[d] what appear to be manic or hypomanic episodes" in his history although Mr. Littlepaige had not recognized them as such.  Tr. 1304. "Only by combining subjective and objective data is an adequate knowledge base assembled to permit diagnosis of the disorders or conditions that may be affecting the patient."  Trzepacz and Baker at 5.  Dr. Hopfenbeck performed a clinical interview and regular mental status evaluations. Tr. 1304, 1310, 1315, 1330, 1361, 1372, 1376. While mental status examination results were generally normal except for restricted affect, the clinical interview revealed a long history of significant mental illness treated with multiple serious antipsychotic and other psychiatric medications. Tr. 1304.  Dr. Hopfenbeck continued prescribing the psychotropic medication medications Mr. Littlepaige used.  Tr. 1304.  Over the ten months of treatment notes in the record, Dr. Hopfenbeck also adjusted Mr. Littlepaige's medications repeatedly in an effort to maximize efficacy and minimize disruptive side effects.  Tr. 1310, 1315, 1330, 1361, 1372, 1376.  The ALJ erred in discounting Dr. Hopfenbeck's opinion for overreliance on Mr. Littlepaige's self-reports.

In summary, the ALJ erred in rejecting Dr. Hopfenbeck's opinion on the basis of the overall medical record.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

        d. Daily Activities and Work Efforts

The ALJ cited a full-time job Mr. Littlepaige obtained in 2015, and "odd jobs cutting grass" as reasons to discount Dr. Hopfenbeck's opinion. Tr. 28. Mr. Littlepaige failed in his attempt to work at a full-time job making doughnuts. The record appears to show he only worked full time for about a month and lost the job entirely after another couple of weeks. Tr. 1367-68 (March 9, 2015 note: "full time" "new job"), 1372-73 (April 16, 2015: "only working one or two days a week"), 1373 (April 23, 2015: "unsure if he still has the job, as they offered him no hours this week"), 1375 (May 6, 2015: "officially lost the job"). Mr. Littlepaige's attempt at full-time work activity thus does not undermine Dr. Hopfenbeck's opinion. Nor does the occasional "odd job." Mr. Littlepaige testified that he went to Home Depot "a couple of times a month" to find odd jobs such as cutting grass or hedges. Tr. 95. This minimal work activity does not undermine Dr. Hopfenbeck's opinion.

The ALJ also cited activities such as walking, biking, or busing around town, obtaining meals, housing and laundry facilities at homeless shelters, playing chess, visiting the aquarium, and taking ferry rides as evidence that Mr. Littlepaige is more functional than Dr. Hopfenbeck's opinion suggests. Tr. 28. The ALJ does not explain how these activities undermine any part of Dr. Hopfenbeck's opinion. These activities do not demonstrate an ability to show up at a job every day and maintain focus for a full eight-hour work day, for example.

Mr. Littlepaige's daily activities and work activities do not undermine Dr. Hopfenbeck's opinion.

        e. Harmful Error

Because none of the reasons given by the ALJ qualifies as "specific and legitimate," the Court concludes that the ALJ erred in rejecting Dr. Hopfenbeck's opinion. The error was

harmful because not all of Dr. Hopfenbeck's opined limitations were incorporated into the RFC and the ALJ may thus have relied in step four and step five on jobs that Mr. Littlepaige cannot perform.

### 2. Examining Doctor Melanie E. Mitchell, Psy.D.

The ALJ gave little weight to Dr. Mitchell's opinion[5] because it was based on one examination, a social services intake report, and Mr. Littlepaige's self-reports, and because it was in check-box form that listed limitations instead of remaining abilities. Tr. 29.[6]

Dr. Mitchell performed a clinical interview and a mental status examination. Tr. 929-30, 932-33. As discussed above, when performed by a trained clinician these are objective measures even though they require the patient's self-report. *See Buck*, 869 F.3d at 1049. That these measures were taken in a single examination also does not undermine Dr. Mitchell's opinion. "While this would be a reason to give less weight to [an examining physician's] opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (emphasis in original) (citing 20 C.F.R. § 404.1527(d)(1)). Here the ALJ placed "[g]reat weight" on the opinion of state-agency reviewers, who did not perform even a single examination. Tr. 28. The ALJ was thus not entitled to reject Dr. Mitchell's opinion on the basis of her having performed a single exam.

---

[5] Although the ALJ stated she assigned little weight "to the GAF score" the remainder of that paragraph implies that her evaluation applies to Dr. Mitchell's entire opinion. Tr. 29.

[6] The ALJ also discounted Dr. Mitchell's opinion because she did not explain why she opined that Mr. Littlepaige's impairments were not the result of drug use in the last 60 days when Mr. Littlepaige said he had used marijuana the previous week. The Commissioner offers no argument in support of this reason, apparently conceding that it is erroneous. There is no contradiction between Dr. Mitchell's awareness that Mr. Littlepaige used drugs and her conclusion that the drugs did not cause his impairments.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

It is unclear whether the ALJ objected to the check-box nature of Dr. Mitchell's opinion, or the fact that she opined limitations rather than residual abilities. Regardless, neither objection is specific and legitimate enough to discount Dr. Mitchell's opinion. The check-box form is supported by the clinical interview and mental status examination. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (discounting opinion because it was in check-box form was erroneous where opinion was supported by treatment records). And while opinions are most helpful to the ALJ in formulating the RFC if they are expressed as capacities rather than limitations, the state agency opinions that the ALJ accorded great weight are expressed as limitations as well. *See* Tr. 28, 199-201, 221-23.

The ALJ erred in rejecting Dr. Mitchell's opinion. The error is harmful because not all of the opined limitations were incorporated into the RFC.

**B.     Record from Prior Applications**

Mr. Littlepaige contends the ALJ erred by not considering the June 2013 opinion of Roland W. Manos, Ph.D., on the grounds that it had been addressed by the July 2013 denial of Mr. Littlepaige's prior application. Tr. 30. Regardless of whether the ALJ erred, Mr. Littlepaige has not demonstrated any limitations opined by Dr. Manos that are not accounted for in the RFC, and thus has not met his burden to show that any error is harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Error is harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Id.* at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In a statement of work capacity, Dr. Manos wrote:

> Craig W. Littlepaige is able to understand simple instructions; however he may have difficulty remembering the instruction. He has had difficulty interacting appropriately with others due to his temper. His ability to concentrate is below average, but is believed to be consistent with overall intellectual ability. Mr. Littlepaige described a tendency to

overreact to routine stress. Given his suspected intellectual limitations, he may experience difficulty when required to adapt to changes in a work environment.

Tr. 920.[7] The RFC limits Mr. Littlepaige to "simple, routine, repetitive tasks" with no tandem, cooperative or team tasks, only "occasional, superficial contact with coworkers and supervisors" and no contact with the general public. Tr. 25. Mr. Littlepaige does not even attempt to identify any inconsistencies between Dr. Manos' opinion and the RFC. The Court concludes that any error is harmless.

**C.      Heather Morgan, M.S.W.**

Ms. Morgan is Mr. Littlepaige's mental health case manager at the Downtown Emergency Service Center. Tr. 101-102. Mr. Littlepaige contends the ALJ erred in assigning little weight to Ms. Morgan's opinion on the grounds that it appeared to be based largely on Mr. Littlepaige's self-reports and contained some unsupported statements, his daily activities were inconsistent with her opinion, and she was his "advocate." Tr. 29. Regardless of whether the ALJ erred, Mr. Littlepaige has not shown how Ms. Morgan's opinion establishes any limitations not accounted for in the RFC.

Ms. Morgan provided a written letter opining that he would have difficulty with "coming to work consistently, having sustained focus and memory, communicating tactfully with his boss and coworkers, restraining his frustration and anger, and refraining from responding to voices or hallucinations." Tr. 1391. Her hearing testimony was similar. Tr. 108-109. Mr. Littlepaige does not demonstrate how these opinions are inconsistent with the RFC that limits Mr. Littlepaige to simple, routine work with minimal contact with coworkers and supervisors and no contact with the public. While the vocational expert testified that employers are currently "only

---

[7] Dr. Manos' opinion was given "great weight" in the prior denial. Tr. 165.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

tolerating about eight to 10 days per year absenteeism[,]" Ms. Morgan's opinion does not establish any particular frequency of absenteeism. Tr. 123.

The Court concludes that any error in discounting Ms. Morgan's opinion was harmless. *See Molina v. Astrue*, 674 F.3d at 1111.

**D.  Mr. Littlepaige's Testimony**

Mr. Littlepaige testified that his anger issues prevent him from working full-time. Tr. 85. He lost a job in 2008 as a janitor after he "got into it with the supervisor." Tr. 95. He was fired from a meat packaging plant for hitting his supervisor. Tr. 96. Mr. Littlepaige has consistently reported to treatment providers that he has auditory and visual hallucinations. *See*, *e.g.*, Tr. 1303-1304.

Because the ALJ found objective medical evidence of an impairment that "could reasonably be expected to produce the … symptoms alleged" and no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (2017); Tr. 25. The ALJ discounted Mr. Littlepaige's testimony of anger issues and hallucinations based on largely normal findings in many treatment notes, his active job search and daily activities, a lack of information about the individuals with whom he got into altercations, and inconsistencies between his hearing testimony and prior statements. Tr. 25-28.

**1.  Inconsistencies**

To find a claimant's statements about his symptoms not credible, the ALJ is "required to provide specific, clear, and convincing reasons to discount the *alleged severity* of [his] *subjective symptoms*…." Treviso, 871 F.3d at 679 (emphasis added). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's *complaints*." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (emphasis added). "If the ALJ wished to reject [a claimant's symptom] testimony, he was required to point to specific facts in the record which demonstrate that [the claimant's symptoms are less severe] than she claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

There is no dispute that Mr. Littlepaige suffers from schizoaffective disorder, learning disorder, and post-traumatic stress disorder. Tr. 22. All medical opinions in the record agree that he has memory and understanding limitations. Tr. 208, 221, 232, 931, 1384. A review of Mr. Littlepaige's hearing testimony shows that what the ALJ describes as inconsistencies with treatment records are more accurately characterized as miscommunication or misunderstanding. In each case, the ALJ asked questions, some of which were tangential to or wholly unrelated to his symptoms, about items she had seen in the record. From Mr. Littlepaige's answer it was unclear whether he even understood the question, but the ALJ did not follow up to clarify apparent discrepancies. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a duty to fully and fairly develop the record).

First, the ALJ found it contradictory that Mr. Littlepaige "testified he was fired because he was not getting along with other employees" but "told a provider that his hours were reduced at work when an employee returned from vacation." Tr. 27. The record does not support the ALJ's reading. Mr. Littlepaige testified that he started working full-time but, after another worker returned from vacation, his hours were cut. Tr. 93. He called to ask about his hours but was ignored. Tr. 94. The employer sped up the production line and did not give Mr. Littlepaige enough training, then yelled at him. Tr. 86. He "had a heated discussion with the supervisor," "lost it with him" and was fired. Tr. 86-87, 94. The treatment notes that the ALJ cites about the episode are consistent with the hearing testimony. Mr. Littlepaige "said ever since a guy came

back from vacation, he's been getting less hours[. He is] concerned about losing his job…." Tr. 1373. Three weeks later, he "officially lost the job...." Tr. 1375. It "came down to lack of communication on both his part and his supervisor. … He tends to get frustrated easily, especially when he doesn't understand things, and that leads to conflict in the workplace." *Id.* None of these statements are inconsistent with Mr. Littlepaige's hearing testimony.

Second, in 2014 Mr. Littlepaige mentioned to a provider that he took a trip to Holland "several years ago when he inherited some money from his grandmother." Tr. 1334. At the 2015 hearing he said the trip was a 1990 graduation gift from his grandmother. Tr. 88-90. Mr. Littlepaige may or may not have contradicted himself, since he may have gone to Holland twice, or perhaps described a gift in layperson terms as an inheritance. Regardless, it bears no significance in this disability determination. Whether Mr. Littlepaige went to Holland in 1990 or sometime around 2010 does not demonstrate that his mental impairments are less severe than he claims.

Third, a March 2015 treatment note states that, related to renewing his bus pass, Mr. Littlepaige "had been accused of forging a doctors form, which he did not do." Tr. 1367. The service provider then successfully helped him renew the bus pass. *Id.* At the hearing, the ALJ asked who accused him of forging a doctor's note and Mr. Littlepaige replied "I don't know nothing about that." Tr. 89. If the ALJ wished to clarify whether he meant he did not know who accused him of a forgery, or he did not know about any forgery because he had not forged anything, or he did not remember any forgery accusation at all, she should have asked.

Fourth, a single note from September 2014 states that he "spends time at the library looking for jobs…." Tr. 1316. At the July 2015 hearing, the ALJ asked "Do you also spend time at the library?" and Mr. Littlepaige replied "No, I don't go there." Tr. 90. Finding these

two statements inconsistent is not a reasonable inference from the record, as there is no contradiction between going in September 2014 to the library and not going in July 2015. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). Furthermore, again, if the ALJ believed it was material to the disability adjudication to determine whether Mr. Littlepaige was lying about either going in September 2014 to the library or not going in July 2015, she should have developed the record.

In summary, the Court concludes the ALJ erred in discounting Mr. Littlepaige's testimony on the basis of inconsistencies in his testimony.

**2. Altercations**

Mr. Littlepaige has been barred from the DESC drop-in center several times for inappropriate and threatening behavior. Tr. 27, 1302. The ALJ discounted this evidence of his mental impairments because the other clients he got into altercations with have mental health impairments too. Tr. 27; *see also* Tr. 109-110. The ALJ also found it "reasonable" that Mr. Littlepaige "took issue with someone who took his cell phone…." Tr. 27 (citing Tr. 1349). The cited record states that Mr. Littlepaige was "kicked out" of a shelter "for getting in a fight with someone who stole his cell phone." Tr. 1349. That the ALJ found it "reasonable" to get into a fight over a cell phone and that other clients at the service center have mental health issues too are not clear and convincing reasons to discount Mr. Littlepaige's testimony about his mental health issues. Tr. 27. The speculation that other clients were responsible for the altercations is not a reasonable inference from the record. The fact that the center barred Mr. Littlepaige suggests that he was at least partially at fault. *See*, *e.g.*, Tr. 1302 (Mr. Littlepaige cut to the front of the line, bumping another client, who became angry. After staff managed to partially separate

them, he escalated the situation "by asking the [other] client to go outside.").

### 3. Medical Evidence

The ALJ cited the following treatment records to show that there were generally normal findings regarding Mr. Littlepaige's mental health: A physician he saw for migraines and urinary frequency documented largely normal psychiatric findings, except for age-inappropriate behavior. Tr. 952, 957. A DESC service provider also documented a few findings, normal except for flat affect. Tr. 1286, 1287. A mental health provider said he "had started on meds and was doing well." Tr. 963. In a hospital visit for vomiting, his mental status was normal. Tr. 1262-64. In a group therapy session for people who hear voices, he exhibited good listening and interaction skills. Tr. 1333. Finally, in February 2015, Mr. Littlepaige showed "improvement in mood and outlook," despite having a bad experience with the lithium he had been prescribed. Tr. 1361.

These isolated instances cannot provide substantial evidence undermining Mr. Littlepaige's testimony when numerous other records contain abnormal findings such as hallucinations, poor or limited judgment and insight, impulsive speech, restricted affect, "loose associations [and] bizarre references." Tr. 1071, 1083, 1088, 1096, 1113, 1134, 1174, 1179, 1185. One report, from a psychiatric social worker at the prison Mr. Littlepaige was in, required him to be "assess[ed] for safety of others prior to being allowed in day room." Tr. 1124. Dr. Mitchell's 2014 clinical findings included flat affect, limited eye contact, psychomotor agitation, BAI score indicating "severe anxiety" and BDI score indicating severe depressive symptoms. Tr. 932-933. Thought process and content, perception, concentration, and insight and judgment were not within normal limits. Tr. 933.

While there are some normal findings, overall the record relied on by the ALJ does not

reflect generally normal mental health.  As the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.  Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  The Court concludes that the ALJ erred in discounting Mr. Littlepaige's testimony on the basis of inconsistency with the overall record.

### 4. Hallucinations

The ALJ discounted Mr. Littlepaige's statements about having hallucinations because "no one has ever seen him responding to internal stimuli." Tr. 26.  This mischaracterizes the record.  *See* Tr. 1113 ("Distracted by internal stimuli"), 1134 ("possible responding to internal stimuli"), 1174 ("+ hallucinations"), 1179 ("Delusional"), 1185 ("very delusional"), 1096 ("Denies [auditory hallucinations] but has some latency in responses.").

### 5. Work and Daily Activities

The ALJ found that Mr. Littlepaige "actively seeking employment" belied his allegations of disability.  Tr. 26.  "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience [symptoms] and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (emphasis in original) ("a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments").  Due to Mr. Littlepaige's mental impairments, he has failed to maintain substantial gainful employment.  His

failed attempts to work do not undermine his symptom testimony.

An ALJ may consider a claimant's daily activities in assessing his or her testimony. But daily activities that do not contradict a claimant's testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ found Mr. Littlepaige's allegations "inconsistent with his wide range of daily activities" because he goes, sometimes with other people, to various places, including some that are crowded. Tr. 28. These activities do not show an ability to maintain his temper on a daily basis with coworkers and supervisors. The ALJ also found Mr. Littlepaige spends "a great deal of time" looking for employment. Tr. 28. The records she cites are reports that, over the course of nine months, he "got some information"; "made some efforts"; "has gone to a day labor place many times"; met with an employment specialist; "has been applying for jobs"; "look[ed] at job postings online"; failed to show up for a job interview; and later interviewed for a job with the support of the employment specialist. Tr. 1300-68. None of these activities show transferrable work skills, such as the ability to attend a job full time, and none materially contradict his testimony.

In summary, the ALJ provided no clear and convincing reasons supported by substantial evidence to undermine Mr. Littlepaige's testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Hopfenbeck and Dr. Mitchell

//

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17

and the testimony of Mr. Littlepaige, and reassess the RFC as appropriate.

DATED this 11th day of May 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE